CHRISTOPHER R. COOPER, United States District Judge
Robert Belt thinks the District of Columbia Public School System ("DCPS") has sold his granddaughter J.B. short. In *4 Belt's view, DCPS has not done enough to ensure that J.B.-who was diagnosed first with a learning disability and later an intellectual disability-makes appropriate academic progress at her public elementary school. Belt and J.B. (collectively, "plaintiffs") sought remedies through the proper administrative channels, but an administrative hearing officer denied their requests. Believing the hearing officer got it wrong, plaintiffs filed this federal lawsuit in June 2017. They claim that DCPS violated J.B.'s right to a "free appropriate public education" ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq . Specifically, they allege that DCPS failed to develop an adequate Individualized Education Program ("IEP") for J.B. and failed to comply with the terms of the IEPs it did produce. To right these alleged wrongs, plaintiffs want DCPS to subsidize J.B.'s placement in a non-public school.
Plaintiffs moved for judgment on the pleadings and summary judgment; the District responded with its own motion for summary judgment. The Court referred the motions to Magistrate Judge G. Michael Harvey, who recommended that the Court deny Belt's motions and grant the District's. Plaintiffs then filed objections to the recommendation, and the District responded to those objections. After a fresh review of the magistrate judge's work and plaintiffs' objections, the Court adopts the magistrate judge's recommendation and will grant summary judgment in the District's favor.
I. Background
A. Factual Background
Magistrate Judge Harvey's Report and Recommendation provides a comprehensive recitation of the facts, see Report and Recommendation ("R & R") at 2-21, so the Court will give only a brief summary.
When this case was filed in June 2017, J.B. was a 14-year-old eighth-grader at LaSalle Backus Elementary School in the District of Columbia. Compl. ¶ 1. She had been given her first IEP as a Specific Learning Disabled student in 2010. Administrative Record ("AR") Exh. 2 at 1. In 2013, J.B. was reevaluated and re-classified as intellectually deficient rather than learning-disabled. Id. A modified IEP followed in October 2014, and once annually over the next three years. Compl. ¶¶ 2, 4, 7, 15.
From the October 2014 IEP through January 2017, according to DCPS's own evaluations, J.B. made only limited-and in some categories, no-progress. See Compl. ¶ 19 (no change in performance in written expression and motor skills). J.B. stagnated in other areas from 2015 to 2017. Id. (no change in social/emotional development). And while J.B. improved in some competencies (like reading) from 2015 to 2017, the reading goals established for J.B. in her IEP stayed the same. Id. [1]
Unhappy with the pace of J.B.'s progress, plaintiffs filed an administrative due process complaint with DCPS in January 2017. The complaint alleged that DCPS had denied J.B. a FAPE by failing to (1) include a special education teacher in J.B.'s IEP planning meetings; (2) develop an IEP in October 2016 and January 2017 that was reasonably calculated to provide educational benefits; (3) identify an appropriate location of services; and (4) implement J.B.'s IEPs effectively given that she had made minimal or no academic progress from October 2014 to January 2017. AR Exh. 1 at 4-5. For relief, plaintiffs sought funding to subsidize J.B.'s placement *5 at a non-public school and enrollment in an extended-school-year program.
An administrative due process hearing took place in March 2017, at which plaintiffs presented four witnesses and the District another two. AR Exs. 3-6; R & R at 3. Shortly thereafter, the hearing officer determined that DCPS had fulfilled its obligation to provide J.B. with a FAPE and denied plaintiffs' requested relief. AR Exh. 1 at 14-15.
This lawsuit challenges that administrative determination. The plaintiffs moved for judgment on the pleadings and for summary judgment. The District opposed both motions and filed a cross-motion for summary judgment. The Court referred these motions to Magistrate Judge Harvey, who issued his R & R on May 5, 2018, recommending summary judgment in the District's favor. Plaintiffs timely filed their objections to the R & R, the District has responded, and the matter is now ripe for the Court's resolution.
II. Legal Standards
A. Judgment on the Pleadings
A party is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c) when "no material issue of fact remains to be solved, and the movant is clearly entitled to judgment as a matter of law." Montanans for Multiple Use v. Barbouletos, 542 F.Supp.2d 9, 13 (D.D.C. 2008) (citations and alteration omitted). In considering a Rule 12(c) motion, "courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss," McNamara v. Picken, 866 F.Supp.2d 10, 14 (D.D.C. 2012), meaning it must accept a complaint's factual allegations as true but need not accept its legal conclusions, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
B. Summary Judgment
Summary judgment is appropriate if the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c) ; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In a case under the IDEA, where the Court reviews a hearing officer's determination, the relevant record is that developed in the administrative proceeding and any additional evidence introduced by the parties. 20 U.S.C. § 1415(i)(2)(C). So where, as here, no additional evidence has been introduced, a motion for summary judgment is in effect a motion for judgment based on the administrative record. District of Columbia v. Ramirez, 377 F.Supp.2d 63, 67 (D.D.C. 2005).
In reviewing the administrative record, courts must give "due weight" to the hearing officer's determination. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Such deference is necessary because "courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.' " Rowley, 458 U.S. at 208, 102 S.Ct. 3034 (quoting San Antonio Ind. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) ). In practice, that means courts should consider a hearing officer's factual findings "prima facie correct" and "may not substitute their own views for those of the hearing officer." Ramirez, 377 F.Supp.2d at 67 (citations omitted). Moreover, a party challenging a hearing officer's determination bears the "burden of persuading the court [by a preponderance of the evidence] that the hearing officer was wrong[.]"
*6 Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (citation omitted).[2]
C. Review of Objections to the R & R
While the Court (and the magistrate judge) must accord "due weight" to the hearing officer's determination in the administrative proceeding, Rowley, 458 U.S. at 206, 102 S.Ct. 3034, it reviews de novo any portion of the R & R to which a party properly objects, Fed. R. Civ. 72(b)(3); Aikens v. Shalala, 956 F.Supp. 14, 19 (D.D.C. 1997). After reviewing the record, objections, and any responses thereto, the Court may "accept, reject, or modify" the R & R's proposed disposition. Fed. R. Civ. P. 72(b)(3).
These interlocking legal standards amount to this: the Court will review with fresh eyes the portions of the R & R to which plaintiffs object, but in so doing, defer appropriately to the hearing officer's determination, just as the magistrate judge did.
III. Analysis
Plaintiffs raise nine objections to the magistrate judge's R & R.[3] Objection to Report and Recommendation ("Pls.' Objections") at 2. The Court takes them in the order plaintiffs present them.
A. The R & R Gives Inadequate Attention to J.B.'s Present Levels of Performance
Plaintiffs first object that the R & R paid too little attention to the IEPs' present-levels-of-performance sections, which are supposed to-but according to the plaintiffs, did not-document J.B.'s current achievement in various academic categories. Pls.' Objections at 17.
Plaintiffs' argument fails for two reasons. First, it is incorrect on the facts: as the magistrate judge documented, the IEPs do estimate J.B.'s current achievement and document her progress. To take just one example-one highlighted in the R & R-the January 2017 IEP noted that J.B. was "able to write and copy simple words and sentences with good letter to baseline alignment" and remarked that she "has improved since the previous years." AR Exh. 2 at 170; see R & R at 37 (discussing January 2017 IEP). Second, even assuming the IEPs were deficient in documenting J.B.'s present performance, plaintiffs must show that this procedural shortcoming led to some substantive denial in the form of a lower-quality education. Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006) (collecting cases that stand for this proposition). Plaintiffs come up short in this regard. While they contend generally that an IEP cannot be tailored appropriately to the needs of the individual student without adequately documenting the student's current achievement levels, Pls.' Objections at 18, they do not show that any purported inattention to J.B.'s present performance led to J.B.'s halting academic progress. The Court therefore overrules plaintiffs' first objection.
B. The R & R Misapplies the Spoliation or "Missing-Evidence" Rule
Plaintiffs next complain that the R & R mistakenly rejected their "missing-evidence *7 rule" argument. Pls.' Objections at 19-20. Plaintiffs assert that DCPS had control over additional evidence regarding J.B.'s academic progress (or lack thereof) but chose not to introduce it into the administrative record. Id. That obfuscation, plaintiffs contend, should compel the Court to draw an adverse inference against the District. But for the same reasons the R & R rejected this argument-most importantly, that the District was under no obligation to provide the alleged missing evidence during the administrative hearing-the Court overrules plaintiffs' second objection. See R & R at 39-40.
C. The R & R Overlooks Defendant's Intentional and Deceptive Practices
Plaintiffs allege that the District answered their complaint with bad-faith evasions. Pls.' Objections at 20. As with plaintiffs' spoliation argument, the Court cannot improve on the R & R's analysis of this claim. See R & R at 25. In short, even assuming that the District's answer were improperly evasive-a proposition for which the Court finds little evidence-the plaintiffs cannot show that any harm came of it. G.G. ex rel. Gersten v. District of Columbia, 924 F.Supp.2d 273, 282 n.3 (D.D.C. 2013) (reasoning that because "the answer does not play a critical role in narrowing the issues" in cases based on a preexisting administrative record, plaintiffs are not prejudiced by inadequate answers). Plaintiffs' third objection is overruled.
D. The R & R Gives Insufficient Weight to Defendant's Failure to Provide Written Notice in January 2017
Plaintiffs' fourth objection highlights yet another perceived procedural error. This time they take aim at the District's written notice of proposed changes to J.B.'s January 2017 IEP. Pls.' Objections at 21-22. Plaintiffs argue that the written notice failed to accurately depict and respond to Mr. Belt's concerns about J.B.'s education. Id. Here again, even assuming that the District mischaracterized Mr. Belt's concerns in the notice, plaintiffs still must show that somehow led to a substantive denial of a FAPE. R & R at 30. They cannot do so. Mischaracterizing Mr. Belt's own views in the notice of proposed changes in no way prevented Mr. Belt from participating in J.B.'s IEP meetings and having his concerns taken into consideration. Id. The R & R properly rejected this argument, so the Court overrules plaintiffs' objection to that portion of the R & R.
E. The R & R Incorrectly Assesses Mr. Belt's Ability to Participate in the IEP Process
Plaintiffs' fifth objection is a variation on the fourth. They argue that Mr. Belt was denied the opportunity to adequately participate in the decision-making process regarding J.B.'s education, and that this led to J.B. being denied a FAPE. Pls.' Objections at 22-23. Plaintiffs' best evidence is Mr. Belt's absence from the October 2016 IEP meeting. Yet here, too, the R & R correctly rejected plaintiffs' argument. See R & R at 27-28. As the R & R notes, because Mr. Belt was absent at the October 2016 meeting, the school continued to operate on the then-current IEP and did not make any substantial changes until the January 2017 IEP meeting, at which Mr. Belt was present and participative. AR Exh. 2 at 70, 87; id. Exh. 3 at 1 (Mr. Belt convincing school to continue speech-language therapy despite a speech pathologist's disagreement). Mr. Belt's isolated October 2016 absence therefore did not seriously impede his participation in the IEP process.
*8 Johnson v. District of Columbia, 873 F.Supp.2d 382, 386 (D.D.C. 2012) (holding the same when parent did not attend one meeting but participated in next meeting). Plaintiffs' fifth objection is overruled.
F. The R & R Incorrectly Concludes that DCPS Employee Shante Freeman did not Withhold Data Regarding J.B.'s Performance
Plaintiffs maintain in their sixth objection that Ms. Freeman's testimony at the administrative hearing discussed performance data that was not included in J.B.'s IEP or discussed at IEP meetings. Pls.' Objections at 24. This, plaintiffs say, demonstrates that Mr. Belt was not given all the information necessary to adequately participate in the IEP process. Id. The R & R, however, concluded that the factual record contradicted plaintiffs' argument. R & R at 31. The Court's fresh review of the record confirms the R & R's conclusion: Ms. Freeman testified that she gave Mr. Belt "copies of all of [J.B.'s] evaluations and reports," AR Exh. 5 at 97, a contact log corroborates that testimony, AR Exh. 2 at 67, and plaintiffs offer only their unsupported allegation to the contrary to rebut this statement. Accordingly, plaintiffs' sixth objection is overruled.
G. The R & R Gives Insufficient Weight to the Fact that the IEPs from 2014 to 2017 did not Change Significantly
Plaintiffs next contend that the R & R should have been more troubled by the substantial similarity between J.B.'s 2017 IEP and her 2014 IEP. Pls.' Objections at 24-25. Precisely what weight the R & R should have given this observation, plaintiffs do not say. But the Court acknowledges the intuition behind plaintiffs' argument: if DCPS truly were crafting effective IEPs for J.B., and if it were indeed providing J.B. with a FAPE, one would expect the 2017 IEP to look meaningfully different from the 2014 iteration. With time comes progress, one hopes, and that progress should manifest itself in evolving IEPs.
Even so, the R & R thoughtfully accounted for the slight changes over J.B.'s four IEPs. The R & R noted, for example, that while "J.B.'s goals and objectives have stayed fairly consistent over the course of the relevant period," her goals were modified once she had made documented progress in certain areas. AR Exh. 2 at 80. In addition, the R & R emphasized that there is no freestanding rule that IEPs evolve in any particular manner; rather, each individual IEP should be judged by whether it is "reasonably calculated to enable a child to make progress in light of the child's particular circumstances." R & R at 42 (citing Endrew F. v. Douglas Cty. Sch. Dist., --- U.S. ----, 137 S.Ct. 988, 999-1001, 197 L.Ed.2d 335 (2017) ). J.B.'s particular circumstances, the R & R found, made for slower progress; that slower progress, in turn, meant the IEPs did not much change. Id. at 42-43. That does not mean, however, as both the hearing officer and the R & R concluded, that each IEP functionally denied J.B. a FAPE. The Court thus overrules plaintiffs' seventh objection.
H. The R & R Gives Insufficient Weight to J.B.'s Limited Academic Progress and Misapplies the Supreme Court's Endrew F . decision
Plaintiffs' eighth objection that the R & R should have ascribed more import to J.B.'s limited progress is bound up with their ninth objection that the R & R misapplied the Supreme Court's decision in Endrew F., 137 S.Ct. at 999-1001. The Court therefore takes them together.
First things first: all agree that J.B. made only limited academic progress. Pls.' Objections at 25; Defendants' Response at 14 (discussing witness testimony *9 at the administrative hearing that J.B.'s progress was "very slight"). The disagreement is what to make of that unfortunate reality. Plaintiffs appear to believe that fact alone establishes that J.B. was denied a FAPE, especially in light of Endrew F. Pls.' Objections at 26. The R & R concluded otherwise, R & R at 40-43, and the Court agrees. In short, limited academic progress does not ipso facto signal a violation of the IDEA any more so than does the existence of substantially similar IEPs year over year. Magistrate Judge Harvey amply addressed plaintiffs' Endrew F. argument; the Court offers only this brief postscript.
It is important to clarify what the Supreme Court's decision in Endrew F. did and did not do. In Endrew, the Court rejected the Tenth Circuit's rule that "a child's IEP is adequate so long as it is calculated to confer an 'educational benefit [that is] merely ... more than de minimis .' " Endrew F., 137 S.Ct. at 997 (alteration in original) (citation omitted). Because that was an improper interpretation of the Supreme Court's decision in Rowley, the Court vacated the Tenth Circuit's decision and remanded the case for consideration of its facts under the correct legal standard: "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 137 S.Ct. at 999.
Now what Endrew F. did not do. It did not hold that any time a child makes limited, or even zero, progress, that a school system has necessarily failed to provide a FAPE and violated the IDEA. Endrew F. may have held that a school system cannot satisfy its statutory obligation merely by pointing to something beyond de minimis progress; but it did not say that the presence of only de minimis progress (or even less than that) equates to an IDEA violation. So while Endrew F. clarified the appropriate legal standard for a challenge like this one, it certainly does not stand for the proposition that any time a child makes negligible (or uneven) academic progress, the school system has violated the IDEA. Indeed, on remand, the Tenth Circuit could reach the same result-rejecting the student's IDEA challenge-that it did the first time around, so long as it does so under the correct legal rubric.
Here, though, both the hearing officer and the R & R applied the correct test. Both asked, as Endrew F. mandates, whether J.B.'s IEPs were "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." 137 S.Ct. at 1001 ; see AR Exh. 1 at 11; R & R at 43 (both discussing Endrew F. ). J.B.'s unique circumstances, the hearing officer and the R & R found, helped explain her modest progress and the slowly evolving IEPs. See AR Exh. 1 at 14; R & R at 42-43. And plaintiffs have not carried their burden of showing that the hearing officer got it "wrong." Reid, 401 F.3d at 521. While plaintiffs point to testimony at the administrative hearing that lamented J.B.'s pace-of-progress, AR Exh. 4 at 37-39, 79, the hearing officer also had to consider testimony that J.B. "is wired in such a way that it is going to take her a tremendous amount of time ... to grow and change," id. Exh. 6 at 21-22. Moreover, and in spite of that, the administrative record shows that J.B. did make some progress-in reading, in speech and language, and in motor skills development. AR Exh. 2, 75-84. In short, the record as a whole provides ample support for the hearing officer's determination that J.B.'s IEPs were "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 137 S.Ct. at 1001. Because that is all that *10 Endrew F. requires, the R & R did not err in reaching the same conclusion. Plaintiffs' final two objections are therefore overruled.
IV. Conclusion
For the foregoing reasons, the Court will adopt Magistrate Judge Harvey's Report and Recommendation in full and will grant the District's motion for summary judgment. A separate Order shall accompany this memorandum opinion.
DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE HARVEY'S [1] REPORT AND RECOMMENDATION REGARDING SUMMARY JUDGMENT
INTRODUCTION
The above captioned action was brought by Plaintiff, Robert Belt on behalf of his granddaughter student J.B. against the District of Columbia ("the District"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq. See Cmplt. ¶ 1[Dkt. 1]. The gravamen of Plaintiff's case against the District is that its agency, the District of Columbia Public Schools ("DCPS"), allegedly denied J.B. a free and appropriate public education ("FAPE"), as required by the IDEA and its implementing regulations. See Id. Plaintiff's avers that DCPS denied student J.B. a FAPE in a number of ways: (1) that DCPS purportedly failed to develop an appropriate individualized education program ("IEP") for J.B. in October 2016 and January 2017 with a special education teacher as a member of J.B.'s IEP team; (2) that J.B. did not have a special education teacher despite an IEP requiring 27 hours per week of specialized instruction outside general education; (3) that the IEP's developed for J.B. in October 2016 and January 2017 were not reasonably calculated to provide educational benefits (as required by the IDEA), because J.B. had made minimal or no academic progress in the previous three years; (4) that DCPS allegedly failed to identify an appropriate location of services for J.B.'s special education needs; and (5) that DCPS allegedly failed to actually implement student J.B.'s IEP's with regard to special education instruction. See Report and Recommendation (R&R) at 2 [Dkt. 18].
However, after filing an administrative due process complaint with the Office of State Superintendent ("OSSE"), Plaintiff's failed to persuade an Independent Hearing Office ("IHO") that DCPS denied J.B. a FAPE (or otherwise denied Plaintiff any substantive rights under the IDEA) after presenting evidence in an administrative hearing. See R&R at 2. Nor did Plaintiff convince Magistrate Judge G. Michael Harvey ("Judge Harvey"), upon appeal of the Hearing Officer's Decision ("HOD") to this Court. See R&R at 24-45.
Accordingly, Judge Harvey issued a thorough opinion recommending that the Court grant the District's cross-motion for summary judgment in this case. See R&R at 24-45; see also Def.'s MSJ [Dkt. 13]; Def.'s Reply Papers MSJ [Dkt. 17]. The District, pursuant to Fed. R. Civ. P. 72(b)(2), now responds to Plaintiff's objections to Judge Harvey's Report and Recommendation, issued on May 8, 2018 ("Pl's Obj.") [Dkt.19]. As shown in more detail below, none of Plaintiff's objections have merit, and the Court should adopt Judge Harvey's well-reasoned opinion. The Court should issue an order granting the District's cross-motion for summary judgment. See Def.'s MSJ; Def. Reply Papers MSJ.
*11 STANDARD OF REVIEW
Federal Rule of Civil Procedure 72(b) permits a district judge to refer dispositive motions to a magistrate judge for proposed findings of fact and recommendations for the disposition of such motions. See Fed. Rule Civ. P. 72(b). A party who is dissatisfied with the recommendations may file specific written objections to the proposed findings and recommendations within 14 days after being served a copy of the recommended disposition. Id. A party may respond to another party's objections within 14 days after being served with a copy. Id. The Court must review, de novo , the portions of the magistrate judge's disposition that have been properly objected to. Id. The Court, in conducting its review, may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id. The party filing the objections may not "present new initiatives to the district judge," Heard v. District of Columbia, 2006 WL 2568013 at *5 (D.D.C. September 5, 2006) (quoting Aikens v. Shalala, 956 F. Supp. 14, 19 (D.D.C. 1997), as the district court may review "only those issues that the parties have raised in their objections to the Magistrate Judge's report." Aikens, 956 F. Supp. at 19.
ARGUMENT
I. PLAINTIFF'S OBJECTION THAT THE REPORT AND RECOMMENDATION ("R&R") DOES NOT GIVE SUFFICIENT ATTENTION TO THE INADEQUACIES OF STUDENT J.B.'S PRESENT LEVELS OF PERFORMANCE AND ITS SUBSTANTIVE EFFECT ON J.B.'S IEP, IS MERITLESS BECAUSE IT IGNORES LAW ON WHAT CONSTITUTES A FAPE, AS WELL AS THE SUFFICIENCY OF AN IEP.
As an initial matter, Plaintiff objects to the R&R on the grounds that although Judge Harvey recognized the testimony and evidence concerning J.B.'s progress, her progress was not actually reflected on her IEP in the section identified as "present levels of performance." Pl's Obj. at 17-19 [Dkt.19]. This is a classic form over substance argument, and should be outright rejected by the Court on the grounds that Plaintiff fails to show how this alleged procedural violation adversely affected their rights under the IDEA. See e.g., Leggett v. D.C. , 793 F.3d 59, 67 (D.C. Cir. 2015) ("DCPS has the standard correct: a procedural violation, such as a school district's failure to provide an IEP by the beginning of the school year, will constitute a denial of a free appropriate public education only if it "result[s] in loss of educational opportunity" for the student (citations omitted); Lesesne ex rel. B.F. v. District of Columbia , 447 F.3d 828, 834 (D.C. Cir. 2006) ("Even assuming Lesesne has not waived her argument on the merits, ..., and even assuming that DCPS violated its procedural obligations, an IDEA claim is viable only if those procedural violations affected the student's substantive rights." (citations and footnotes omitted)).
Moreover, Plaintiff's objection should be denied because the IEP does indeed, reflect progress in some academic areas, or otherwise contains information to glean J.B.'s progress. See Damarcus S. v. District of Columbia , 190 F. Supp. 3d 35, 52 (D.D.C. 2016) ("The Court therefore agrees with the District that Damarcus's baselines of 'grade level 1 confers a plethora of facts about the student's academic performance and ability' to educational professionals.")
In reading, J.B.'s present levels show that she had almost completed the second unit of the Edmark Reading program and was being considered for advancement to *12 the next level reading program. AR at 162-163. A prior IEP showed that J.B. had just been placed in the second level of the Edmark Reading program. Compare AR at 66. The present levels of performance also showed that J.B. had progressed in written expression. The 2017 IEP shows that J.B. was able to use a question mark appropriately and could transfer ideas into a short paragraph of two to three sentences independently. AR at 164. The previous IEP indicates that J.B. needed extensive prompting and support to write a paragraph. Compare AR at 68. In the area of motor skills/physical development, the present levels of performance in J.B.'s 2017 IEP shows improvement from a previous IEP in that she was able to write her first and last name on the top of her assignments with appropriate spacing. AR at 170, compare AR at 73.
The R&R notes that the IEP reflects the progress J.B. made: "The January 2017 IEP noted J.B.'s improved reading ability and expanded her goals in speech and language, motor skills and physical development." R&R at 37.
Plaintiff also appears to argue that J.B.'s lack of progress means that her IEP was inappropriate. Pl's Obj. at 18-19. As previously, argued, Plaintiff's premise is invalid because there is evidence of J.B.'s progress on the face of the 2017 IEP. Moreover, as the R&R points out, "progress, or the lack thereof, while important, is not dispositive" of whether an IEP is appropriate. R&R at 37 [18]. Plaintiff's objection should be denied.
II. THE COURT SHOULD DENY PLAINTIFF'S OBJECTION THAT THE R&R MISAPPLIED THE "SPOLIATION RULE" AS THE RULE IS NOT THE SAME AS CARRYING ONE'S BURDEN OF PROOF OR PERSUASION UNDER THE LAW.
In his Objections, Plaintiff concedes that the missing evidence rule generally applies after a party "fails to comply with discovery," and concedes that discovery is not conducted in administrative IDEA cases. Pl's Obj. at 19. First, the Court may outright reject Plaintiff's spoliation argument because he makes no argument that the District "intentionally destroyed" evidence, and he otherwise does not identify specific evidence actually withheld by DCPS in the administrative proceeding. See Gerlich v. U.S. Dep't of Justice , 711 F.3d 161, 170 (D.C. Cir. 2013) ("This court has recognized that a negative inference may be justified where the defendant has destroyed potentially relevant evidence." (citations omitted); Talavera v. Shah , 638 F.3d 303, 312 (D.C. Cir. 2011) ("The destroyed records were relevant to Talavera's challenge because the USAID defended on the ground that her non-selection was based on her poor performance during Streufert's interview of her, and the notes might have undermined his claim that the man he selected exhibited more knowledge of the job than she did and might also have confirmed Talavera's assertion that Streufert asked her different questions than he asked of the men he interviewed."); Int'l Union, United Auto., Aerospace and Agric. Implement Workers of America (UAW) v. Nat'l Labor Relations Bd. , 459 F.2d 1329, 1336 (D.C. Cir. 1972) ("Simply stated, the rule provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." (emphasis added)).
Moreover, paragraph 700.4 of the Standard Operating Procedures, Special Education Student Hearings and Appeals clearly states that "the Hearing is not government by formal rules of procedure or evidence." [13 - 1 at 30]. The operating procedures are consistent with the well settled principal that hearsay evidence is allowed in administrative proceedings under *13 the IDEA, so long as the evidence is relevant or immaterial. See Sykes v. District of Columbia , 518 F. Supp. 2d 261, 268 (D.D.C. 2007).
Perhaps most importantly, the alleged destroyed evidence must give Plaintiff the "best opportunity to prevail" in her case. Talavera , 638 F.3d at 312 (In Title VII non-selection case, the Court remarking about destroyed notes concerning selection process "...[t][he notes represented Talavera's best chance to present direct evidence that Streufert's proffered reason for the selection was pretextual."). And "..., if a party has good reason to believe his opponent has failed to meet his burden of proof, he may find no need to introduce his strong evidence." UAW , 459 F.2d at 1338 (citations omitted)). Alternatively stated, the adverse inference rule is inapplicable where there are legitimate reasons for failing to produce such evidence, such as litigation strategy. See Huthnance v. District of Columbia , 722 F.3d 371, 378 (D.C. Cir. 2013) ("We have likewise proscribed the inference when its premises do not obtain, such as when there are innocuous explanations for the party's failure to introduce the evidence. Explanations might range from '[c]onsiderations of strategy, economy and logistics, reinforced by the rule against cumulative evidence.' " (quoting United States v. Pitts, 918 F.2d 197, 199 (D.C.Cir.1990) ).
Nevertheless, Plaintiff argues that the District should have produced additional documents to prove J.B.'s present levels of performance rather than being permitted to rely solely on the testimony of their witnesses, which constituted "multiple layers of hearsay." Pl's Obj. at 19-20. Plaintiff's Objection is without merit and should be denied.
In addressing Plaintiff's spoliation argument, the R&R states that it would have been inappropriate to give Plaintiff the benefit of an adverse inference because (1) the District was under no obligation to present the purported missing evidence; and (2) the District "may well have chosen not to bog down the hearing officer (or this Court) with additional evidence when the administrative record already included the relevant IEPs, J.B.'s psychological re-evaluation, a 2016 progress report and testimony from DCPS employees Ms. Wheeler, Mr. Wdigel and Ms. Freeman." R&R at 39-40. The R&R correctly applies the spoliation rule and Plaintiff's Objection should be denied.
III. THE COURT SHOULD DENY PLAINTIFF'S OBJECTION THAT THE R&R FAILS TO APPROPRIATELY CONSIDER THE INTENTIONAL AND DECEPTIVE PRACTICES RAISED IN PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS.
In his Objections, Plaintiff argues the allegations in his Complaint should have been deemed admitted because the administrative record is in the District's control; therefore, the District cannot state that it is "without knowledge or information sufficient to form a belief as to that matter." Pl's Obj. at 20-21. Plaintiff has misstated the District's answers to his complaint and demonstrates a misunderstanding of the applicable law governing sanctions for bad faith or evasive pleading. See Clay v. District of Columbia , 831 F. Supp. 2d 36, 47 (D.D.C. 2011) ("[I]f the court finds ... that the party intends to make the pleading evasive, the court may strike the relevant portion of the pleading, or treat the allegation as ineffective as a denial ...However, if knowledge of a fact cannot be ascertained within the time the party is given to answer with a modest expenditure of effort, a denial of knowledge or information is appropriate..." (quoting 5 Wright & Miller Fed. Prac. & Proc § 1262 (3d Ed))
*14 First, the District did not merely state that it had no knowledge of the facts within the complaint. Rather, the District answered in many instances that it could neither affirm nor deny the allegations at that time because it had not received a complete copy of the administrative record from the Office of the State Superintendent for Education (OSSE), which may or may not contain information concerning Plaintiff's averments. See the District's Answer, generally [6]. Second, as the R&R noted, "there is no evidence of sanctionable conduct. Rather, Defendant's response to the Complaint is understandable because 'the defendant here is the District of Columbia and the factual allegations at issue involve a single student in a large school system.' " R&R at 25. Further, the R&R quoted Judge Rudolph Contreras' position on this issue: "In actions involving motions for summary judgment based on an administrative record, the answer does not play a critical role in narrowing the issues." Id.
The R&R considered Plaintiff's argument and correctly rejected the argument based on the applicable law in this Court. Plaintiff's Objection should be denied.
IV. THE COURT SHOULD DENY PLAINTIFF'S OBJECTION THAT THE R&R FAILS TO GIVE SUFFICIENT WEIGHT TO DEFENDANT'S FAILURE TO PROVIDE AN APPROPRIATE PRIOR WRITTEN NOTICE IN JANUARY OF 2017.
In his Objections, Plaintiff argues that the prior written notice failed to address Plaintiff's opinion that J.B.'s placement and program were inappropriate and did not comply with the statutory requirements concerning prior written notices. Pl's Obj. at 21-22. The Court can easily reject this argument, as Judge Harvey again properly recognized that in the absence of actual prejudice, such technical violation do not amount to the denial of a FAPE i.e. , a showing of an adverse effect on the substantive rights must be made in order for procedural violations of the IDEA to be actionable. See Leggett , 793 F.3d at 67 ; Lesesne, 447 F.3d at 834 ; A.I. ex rel. Iapalucci v. District of Columbia , 402 F. Supp. 2d 152, 164 (D.D.C. 2005) ("[T]echnical defects are not sufficient to render the IEP inappropriate if the parents and district are aware of the relevant information." (quoting Chuhran v. Walled Lake Consol. Schs. , 839 F. Supp. 465, 471 (E.D. Mich. 1993) )).
The R&R discussed Plaintiff's prior written notice argument and reached the following conclusions: (1) the wording on the prior written notice was consistent with the IEP meeting notes and Plaintiff's later expressed disapproval of J.B.'s placement and programming did not render the prior written notice inaccurate; and (2) Plaintiff failed to show how an allegedly inaccurate prior written notice violated his rights. "Plaintiffs have made no attempt to explain how a failure to accurately represent Ms. Belt's own views in a written notice promulgated to inform him of changes in J.B.'s IEP could possibly be construed as seriously infringing on his opportunity to participate in the IEP process. Surely Mr. Belt did not need to be made aware of his own opinions as to J.B.'s education." R&R at 30.
Here, as in his motion for summary judgment, Plaintiff has failed to argue why an allegedly inaccurate prior written notice resulted in substantive denial of a free appropriate public education (FAPE). Plaintiff's Objection should be denied.
V. THE COURT SHOULD DENY PLAINTIFF'S OBJECTION THAT THE R&R INCORRECTLY ASSESSES MR. BELT'S S ABILITY TO FULLY PARTICIPATE IN THE IEP PROCESS.
In his Objections, Plaintiff argues that he was unable to fully participate in the IEP meeting because (1) he was not invited *15 to the October 2016 meeting; (2) there was no special education teacher at the IEP meetings; (3) the prior written notice misrepresented his position; and (4) "the information presented to the parent at the IEP meeting ... was never even discussed at the January 10, 2017 IEP meeting nor was the information either provided to the parent at the IEP meeting or produced at the due process hearing." Pl's Obj. at 23.
The District previously addressed the prior written notice issue in part IV in this response and need not repeat its response here. The District does not understand the fourth issue described by Plaintiff and therefore, cannot provide a cogent response.
Regarding the October 2016 IEP meeting, the record evidence showed that several attempts were made to contact Plaintiff to invite him to the meeting, but those attempts were unsuccessful. AR at 149-154. The October meeting was held because the previous IEP was due to expire; however, no one from DCPS considered that IEP a valid document because there was no parental input. AR at 129, 153. This fact was noted in the R&R: "Because Mr. Belt was not present at the October 2016 meeting, school officials provisionally continued the then-current IEP and pledged to 'continue efforts to reach [J.B.'s] family and conduct a full review of [her] IEP again with participation and input from her family.' " R&R at 27. The R&R then notes that Plaintiff attended and fully participated in the January 2017 IEP meeting. Id. at 27-28. Indeed, changes were made to the proposed IEP based on Plaintiff's input.
Regarding the issue concerning the special education teacher, the R&R considered and rejected Plaintiff's argument because Plaintiff failed to show how the absence of a special education teacher at an IEP meeting affected his substantive rights. R&R at 28-29. As the R&R noted, the IEP team included an expert in special education programming, Ms. Freeman, who worked directly with J.B.'s teacher and had reviewed J.B.'s class performances. The R&R concluded that Ms. Freeman was an "adequate substitute" for a special education teacher. Here, as in Plaintiff's motion for summary judgment, Plaintiff fails to show how the absence of a special education teacher at the IEP meeting affected his substantive rights. Plaintiff's Objection should be denied.
VI. THE COURT SHOULD DENY PLAINTIFF'S OBJECTION THAT THE R&R IS INCORRECT IN ITS ASSERTION THAT THERE IS NO EVIDENCE THAT MS. FREEMAN FAILED TO PRESENT EVIDENCE TO PLAINTIFF AT THE JANUARY 10, 2017 IEP MEETING AS THE INFORMATION DISCUSSED IS NEITHER IN THE IEP NOTES NOR IN THE PRESENT LEVELS OF PERFORMANCE.
In his Objections, Plaintiff argues that Ms. Freeman testified that J.B. had been administered some testing that indicated growth but there was no mention of this testing in the IEP or in the present levels of performance, the implication being that Plaintiff was not provided with important information and was, therefore, denied full participation in the IEP process. Pl's Obj. at 24. This argument, of course, ignores the fact that it was Plaintiffs' burden to introduce evidence before the IHO showing otherwise, and that they failed to do so. See Reid ex rel. Reid v. District of Columbia , 401 F.3d 516, 521 (D.C. Cir. 2005) ("To start with the standard applicable in the district court, it is true that under our precedent "a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for *16 doing so." (quoting Kerkam v. McKenzie , 862 F.2d 884, 887 (D.C.Cir.1989) ("Kerkam I")).
Here, Plaintiff's Objection is without merit because there is record evidence showing that Plaintiff was provided with all of the evaluations prior to the January 2017 IEP meeting. J.B. was administered a comprehensive psychological evaluation in October 2016. AR at 88. She was also given a speech-language evaluation, an adaptive behavior evaluation and an occupational therapy evaluation. AR at 186-187. A contact log indicates that a copy of all of these evaluation reports was sent to Plaintiff's home on October 17, 2016. AR at 154. Further, Ms. Freeman testified that she sent the packet of information to Plaintiff. AR at 455.
Contrary to Plaintiff's Objection, there is record evidence that the information was provided to Plaintiff, and the he was able to fully participate in the January 2017 IEP meeting. The R&R referenced Ms. Freeman's testimony and the contact log stating, "Plaintiff provide[d] no evidence to contradict this statement-and it is their burden to do so." R&R at 31. Plaintiff's Objection should be denied.
VII. THE COURT SHOULD REJECT PLAINTIFF'S OBJECTION THAT THE R&R FAILS TO PROVIDE APPROPRIATE WEIGHT TO THE EVIDENCE THAT EVERY IEP BETWEEN 2014 AND 2017 IS EITHER SUBSTANTIALLY SIMILAR OR IDENTICAL IN DETERMINING THE APPROPRIATENESS OF THE IEP.
In this sub-heading, Plaintiff states that the R&R failed to provide the appropriate weight to the evidence that the IEPs from 2014 to 2017 were similar, but Plaintiff fails to articulate what that appropriate weight should be. Pl's Obj. at 24-25. Plaintiff does not flesh out an argument under this sub-heading. However, based on the questions Plaintiff raises in this sub-section, the District assumes that Plaintiff meant to argue that the January 2017 IEP was inappropriate because it had not changed from the previous IEPs.
There is no statutory requirement that an IEP change from school year to school year. Rather, the IDEA requires that the IEP "... must include a statement of measurable annual goals, including academic and functional goals, designed to meet the child's needs that resulted from the child's disability to enable the child to be involved in and make progress in the general education curriculum." 20 U.S.C. § 1414(d)(1)(A)(i)(11)(aa). "To meet [this] substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F. , 137 S. Ct. at 999 ; cf . Jenkins v. Squillacote , 935 F.2d 303, 305 (D.C. Cir. 1991) (quoting Kerkam v. Superintendent of D.C. Public Schools , 931 F.2d 84, 86 (D.C. Cir. 1991) and Rowley , 458 U.S. at 207 ).
The R&R further notes that the lack of progress does not mean that the IEP was inappropriate; the IEP need only be reasonably calculated to enable a child to make progress. R&R at 37, citing Moradnejad, 177 F. Supp. 3d at 275 (quoting K.S. v. District of Columbia, 962 F. Supp. 2d 2167, 221 (D.D.C. 2013). In any event, the record evidence shows that J.B. made progress and Judge Harvey points this out in the R&R. R&R at 37-38. Plaintiff's Objection should be denied.
VIII. THE COURT SHOULD DENY PLAINTIFF'S OBJECTION THAT THE R&R FAILS TO GIVE SUFFICIENT WEIGHT TO THE ESTABLISHED FACT THAT J.B.'S PROGRESS WAS "VERY SLIGHT" OR DE MINIMIS .
In his Objections, Plaintiff appears to be arguing that the R&R should have given more weight to the testimony of his two *17 experts who were "frustrated" with J.B. lack of growth than to DCPS's witness, who testified that J.B.'s progress has been "very slight." Pl's Obj. at 25. Plaintiffs' argument ignores the law requiring that a student's IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." See, Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 994, 197 L. Ed. 2d 335 (2017). The IEP is the means by which special education and related services are "tailored to the unique needs" of a particular child." (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley , 458 U.S. 176, 181, 102 S. Ct. 3034, 3038, 73 L. Ed. 2d 690 (1982) ).
Plaintiff's argument makes no sense because all three witnesses essentially testified that J.B. made "very slight" progress and Plaintiff acknowledges this fact in his objection. Id. Plaintiff also suggests that DCPS engaged in "predetermination" and was also at fault because the agency "discuss[ed] one thing for three years with the parent." Pl's Obj. at 26. Frankly, the District does not understand what Plaintiff is talking about. The District assumes that Plaintiff is arguing that the January 2017 IEP was inappropriate because J.B., in Plaintiff's opinion, did not make sufficient progress during the school year.
An October 2016 comprehensive psychological re-evaluation found that J.B. performed in the "deficient" range in the areas of verbal comprehension, visual spatial index, fluid reasoning, working memory and processing speed, and calculated J.B.'s Full Scale IQ at 59. AR at 99. When discussing J.B.'s disability, Ms. Freeman testified that J.B. had a moderate cognitive disability and was "wired in such a way that it is going to take her a tremendous amount of time and support in order to look to grow and change." AR at 479-480. Despite her significant disability, J.B. did make progress during the school year. The R&R notes that J.B. improved in reading and reading comprehension, progressed in certain mathematical domains and showed significant growth in social skills. R&R at 42.
The R&R notes that J.B.'s "unique circumstances" includes her very low scores in the moderate range of students with an intellectual disability, and the fact that it takes J.B. a considerable amount of time to acquire new information. The R&R concluded that "in light of J.B.'s specific impairments, Plaintiffs have not satisfied their burden of showing that the hearing officer's determination 'was wrong'." R&R at 43. Plaintiff's Objection should be denied.
IX. JUDGE HARVEY APPROPRIATELY APPLIED THE ENDREW F. STANDARD TO THIS CASE.
In his Objections, Plaintiff argues that the R&R should have reached the same conclusion as the Court in Endrew F . because "these cases overlap significantly." Pl's Obj. at 28. Contrary to Plaintiff's arguments, Judge Harvey correctly applied Endrew F , given J.B.'s "unique circumstances," i.e. , "any review of an IEP must appreciate that the question is whether the IEP is reasonable, not whether the court regards it as ideal." Z. B. v. District of Columbia, 888 F.3d 515, 528 (D.C. Cir. 2018) (quoting Endrew F. , 137 S.Ct. at 999 (emphasis in original).
Plaintiff's argument is essentially the same argument presented in other parts of his objections; that is, the IEP was inappropriate because it did not change from year to year and because J.B. made de minimis progress. The District has already addressed those arguments and will not repeat those responses here.
Plaintiff also argues that DCPS had low expectations of J.B. because of her disability.
*18 Pl's Obj. at 27-29. Plaintiff's argument is meritless because its premise is untrue. While DCPS recognized that J.B.'s Full Scale IQ of 59 was clear evidence of her limited cognitive abilities, there is record evidence that DCPS believed that J.B. could excel in some areas if she was given the opportunity. Ms. Freeman testified she'd like for J.B. to be exposed to the general education curriculum in history and science because she believed J.B. was capable of doing more in those areas with fewer special education modifications to the curriculum. AR at 484. Plaintiffs, on the other hand, were seeking a more restrictive special education environment for J.B. where she would only be exposed to disabled peers.
The R&R provides a thorough analysis of Endrew F . and Plaintiff's argument concerning low expectations. R&R at 40-43. The R&R concluded that the IEP was appropriate because it considered J.B.'s unique circumstances. Plaintiff's Objection should be denied.
CONCLUSION
For the reasons previously stated, Plaintiff's Objections should be rejected by the Court, and Judge Harvey's April 25, 2016 Report and Recommendation should be adopted by the Court.
Dated: June 5, 2018.

The details of these IEPs, the meetings surrounding them, and documentation of J.B.'s academic progress are discussed more fully in the R & R. See R & R at 3-14.

The D.C. Circuit has cautioned that, because the reviewing court can hear evidence not considered in the administrative proceeding, less deference ought to be accorded to IDEA determinations than is typical in other administrative contexts. See Reid, 401 F.3d at 521. But that caveat is less salient here since the record before the Court is identical to that before the hearing officer.

Technically, they raise ten, but one is simply a point heading without argument, see Pls.' Objections at 20, and the Court will not address it.

Plaintiff's Objection erroneously states that the Report and Recommendation was issued by Magistrate Judge Bowler..